# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **METROPCS, a brand of T-Mobile USA, Inc., a Delaware Corporation,**<br>       **Plaintiff,**<br><br>       v.<br><br>**ISAIAH THOMAS, et al.**<br>       **Defendants.** | **CIVIL ACTION**<br><br>**NO. 17-4557** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                      **February 21 , 2018**

### I.     Introduction

Plaintiff MetroPCS alleges that pro se Defendant Nina Stewart is part of a scheme to fraudulently obtain and sell handsets and phones, which were sold on Facebook. Stewart, a resident of South Carolina, moves to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). She further asserts in an unsworn statement that she had no part in the scheme and the posts from her Facebook account came from her son, Defendant Isaiah Thomas. Stewart's motion to dismiss the Complaint for lack of personal jurisdiction is presently before the Court. For the reasons that follow, this Court denies Stewart's motion to dismiss.

### II.     Background

The following facts are taken as true from Plaintiff's complaint. Plaintiff MetroPCS is a brand of T-Mobile, USA Inc., a Delaware corporation, and sells wireless handsets. (Compl. ¶ 1, ECF 1). Plaintiff's business model works by subsidizing the cost of the handset and "selling the [h]andsets for less than what Plaintiff pays to the manufacturers for the [h]andsets." Id. ¶ 25. Plaintiff then earns this investment back by charging for the network service, including calls, text, and data, on the MetroPCS network. Id. The handsets are sold subject to terms and

conditions and with software installed that are designed to prevent a consumer from using the handsets on any network besides Plaintiff's. Id. ¶¶ 26-27.

In August of 2016, Plaintiff became aware of a series of Facebook advertisements for the sale of new MetroPCS handsets. Id. ¶ 39. Upon further research, Plaintiff identified Philadelphia resident Isaiah Thomas, Stewart's son and the lead defendant in this case, as a former employee at an authorized MetroPCS dealer. Id. ¶ 40. Thomas was fired after it was discovered that he was teaching customers how to exploit a promotion of trading in phones from other carriers whereby a customer would switch networks to Metro PCS and use an inexpensive pay-as-you-go phone from a nearby discount store to obtain much higher priced smartphones from Plaintiff. Id. ¶¶ 40-44.

After his employment was terminated, Thomas used this method to obtain MetroPCS handsets that he would then advertise for sale on Philadelphia-based Facebook groups for buying and selling goods. Id. ¶¶ 39, 44-45. From August 31, 2016 to September 16, 2016, an investigator employed by Plaintiff communicated with Thomas about the sale of MetroPCS handsets Id. ¶¶ 45-47. A cease-and-desist letter was served on Defendant Thomas on October 19, 2016. Id. ¶ 49.

When Thomas was no longer able to act alone after being turned away from MetroPCS stores, he recruited his friends and family to assist. Id. ¶ 50. The co-Defendants are alleged to have worked as runners to obtain MetroPCS handsets and then posted advertisements from their personal Facebook accounts. Id.

Plaintiff asserts that Thomas recruited his mother, Nina Stewart, to assist his plan. Id. ¶ 55. She is a resident of Columbia, South Carolina. Id. ¶ 17. Advertisements for the fraudulently obtained handsets were posted from Stewart's personal Facebook account to the same

Philadelphia-based Facebook groups that Thomas posted to from his account. Id. ¶ 55. Stewart was served with a cease-and-desist letter on September 6, 2017, but advertisements continued to be posted from Stewart's account after this date. Id. ¶ 56.

### III.     Procedural History

On October 12, 2017, Plaintiff filed this action. The thirteen counts of this complaint are:

1) unfair competition;

2) tortious interference with existing and prospective business relations and contracts;

3) conspiracy to commit fraud and fraudulent misrepresentation;

4) unjust enrichment;

5) common-law fraud fraudulent misrepresentation;

6) trafficking in computer passwords, 18 U.S.C. § 1030(a)(6);

7) unauthorized access, 18 U.S.C. § 1030(a)(5)(C);

8) unauthorized access with intent to defraud, 18 U.S.C. § 1030(a)(4);

9) federal trademark infringement, 15 U.S.C. § 1114;

10) federal common-law trademark infringement and false advertising, 15 U.S.C. § 1125 (a)(1)(A) and (B);

11) contributory trademark infringement;

12) conversion; and

13) injury to business or reputation; dilution of trademarks, 54 Pa. C.S. § 1124.

(Compl., ECF 1.)

On December 20, 2017, a default was entered as to four of the seven defendants: Brion Benson, Keosha Lawson, Rolan Stephens, and Isaiah Thomas. (ECF 21).

On November 16, 2017, Stewart filed a pro se motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer venue to the District of South Carolina in the interests of justice. (Mot. to Dismiss, ECF 15).

In an unsworn statement included with the motion to dismiss, Stewart asserts that she was born in Pennsylvania, but has not lived there since 1999. Id. ¶ 1. Stewart further asserts she has not conducted business in or visited the state of Pennsylvania for more than ten days since 2007. Id. ¶¶ 2-3. Stewart also alleges that she was not the person who made the advertisement postings from her personal Facebook account, but instead her son, Isaiah Thomas, was the one who did so by utilizing the information he had from setting up her account in 2007. Id. ¶ 4.

Plaintiff filed a response in opposition to Defendant's motion to dismiss on November 30, 2017. (ECF 18). Plaintiff's response included an affidavit from a private investigator and screenshots of the advertisements in question. (ECF 18-1). The affidavit states that 60 advertisements for MetroPCS phones were posted from Stewart's account, 57 of which were posted on buying and selling groups specific to Philadelphia. Id. ¶ 16. In addition, the private investigator states that he found a business known as American Credit with an address in Philadelphia owned by one Nina Thompson. Id. ¶ 20. Plaintiff alleges that this business is run by Stewart and that business is still active according to the Pennsylvania Department of State website. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 6, ECF 18).

**IV.    Legal Standard**

In considering a motion to dismiss under Rule 12(b)(2), "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys R US v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). Once a jurisdictional defense has been raised, "the plaintiff

must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir. 1984). When the district court does not hold an evidentiary hearing, the plaintiff must establish only a prima facie case of personal jurisdiction. Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir.2010) (citing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir.2009)).

A federal district court may assert personal jurisdiction over a non-resident to the extent of the law of the state in which it sits according to Federal Rule of Civil Procedure 4(e). Time Share Vacation Club, 735 F.2d at 63. The long-arm statute for Pennsylvania provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). The Due Process Clause of the Fourteenth Amendment requires non-resident defendants to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (alteration in original). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987)).

There are two types of personal jurisdiction a court may have over a defendant: general jurisdiction and personal jurisdiction. General jurisdiction requires a defendant to have

5

maintained systematic and continuous contacts with the forum state, and specific jurisdiction requires the claim to arise out of conduct purposely directed at the forum state. Remick, 238 F.3d at 296. (citing Helicopteros Nacionalesa de Colombia, 466 U.S. 408, 414-15 (1984)). When neither party argues that general jurisdiction exists over the defendant in the forum state, the court may examine specific jurisdiction on its own. Remick, 238 F.3d at 296. (citing Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998)).

> There are three steps to determining specific jurisdiction:
>
> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice.

Marten, 499 F.3d at 296 (3d Cir. 2007) (internal quotations and citations omitted) (alteration original). Once a court is satisfied that a defendant has established minimum contacts satisfying the first two parts of this test, it will deny jurisdiction only if the defendant "make[s] a 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 323 (3d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

V. **Analysis**

It is undisputed that Stewart lives in Columbia, South Carolina; Stewart asserts that she does not reside in Pennsylvania and has not since 1999. (Compl. ¶ 17, ECF 1; Mot. to Dismiss ¶ 1, ECF 15). Plaintiff asserts that Stewart lives in Columbia, South Carolina. Plaintiff has not alleged sufficient facts that Stewart resides in or regularly personally conducts ongoing business in Pennsylvania.

Nevertheless, MetroPCS has alleged sufficient facts to make out a prima facie case that this Court has personal jurisdiction over Stewart. Plaintiff has alleged that Stewart knowingly and intentionally posted ads on Philadelphia-specific Facebook pages for transacting goods in order to sell fraudulently obtained handsets and phones. (Compl. ¶ 55, ECF 1). The affidavit of Plaintiff's investigator details screenshots of 60 advertisements posted from Stewart's personal Facebook account, 57 of which were placed on Philadelphia-specific groups for buying and selling items over the internet. (Leshner Aff. ¶ 16, ECF 18-1). These ads were supported by direct communications from Stewart's account through a "message seller" button which was responded to the investigator used it. Id. at ¶¶ 17-18. After being contacted by the investigator, who was acting as a buyer, Stewart's account, marked as a "member of Northeast Philly Buy Sell or Trade," messaged back to get details of the need for the phone and followed up with messages and a phone call over a week after first contact. Id. The messages stated that the person messaging on Stewart's account would be "back in town tomorrow" at one point, referencing Philadelphia. Id.

Jurisdiction over a non-resident who commits a tort outside of the forum state must be analyzed by the "effects test" from Calder v. Jones, 465 U.S. 783 (1984). The Third Circuit adopted this test in IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998) and stated that the plaintiff must show:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66. This is perhaps best articulated for a nonresident defendant conducting business activity over the internet in the case of Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa. 1997). The Zippo court stated:

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there." ... If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, ... it could have chosen not to sell its services to Pennsylvania residents.

Id. at 1126–27 (quoting World–Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)).

Plaintiff has satisfied all three prongs of the IMO test. Plaintiff has alleged that Stewart committed an intentional tort by posting the Facebook ads for the sale of the fraudulently obtained handsets. (Compl. ¶ 55, ECF 1). The brunt of the harm is felt in Pennsylvania as the sales were done in Pennsylvania, making it less likely that customers would purchase directly from Plaintiff. Id. ¶ 4. Plaintiff has shown that Stewart expressly aimed her tortious conduct at Pennsylvania because it alleges that Stewart posted these ads on groups targeting Philadelphia area buyers and sellers purposefully and did so in 57 out of 60 of her advertising posts, or 95%. (Leshner Aff., ECF 18-1). Thus, the facts as alleged by Plaintiff satisfy all three prongs of the "effects test" and show that personal jurisdiction over a nonresident defendant in Pennsylvania is reasonable in this case. Further, under Zippo, choosing to post 95% of the Facebook ads for phones and handsets to Philadelphia based groups should make Stewart aware that she may be sued in Pennsylvania and makes jurisdiction in Pennsylvania reasonable.

Stewart alleges that the ads posted by her Facebook account were not actually posted personally, but by her son, who had access to the account because he had originally set up the account in 2007. (Mot. to Dismiss ¶ 4, ECF 15). However, at this stage the Court must view disputed facts Plaintiff alleges as true and Plaintiff has made a prima facie case for jurisdiction over Stewart. Additionally, the screenshots of the ads provided by Plaintiff's investigator cast

doubt over Stewart's unsworn statements in her motion to dismiss. The ad labelled as "Stewart Ads 000009" is marked as being posted from Columbia, South Carolina, where Stewart resides. (Leshner Aff., ECF 18-1). The remaining ads to the Philadelphia based groups were marked as being posted from Philadelphia. Id. This geo-tagged location on the relevant post would seem to contradict Stewart's claim that no post originated from South Carolina. (Mot. to Dismiss ¶ 5, ECF 15).

Defendant has not requested jurisdictional discovery; only Plaintiff has done so, should the Court decide more information is needed. (Pl.'s Resp. to Def.'s Mot. to Dismiss 19, ECF 18). Defendant has made only a motion to dismiss entirely due to lack of personal jurisdiction or to transfer to the U.S. District Court for the District of South Carolina in the interests of justice. (Mot. to Dismiss, ECF 15). Defendant's only justification is her own unsworn statements alleging her son was actually the one who posted the ads. Id. at ¶ 4. This assertion is supported by no evidence.

As for Stewart's motion in the alternative to transfer venue in the interests of justice, the Court notes that the alleged scheme took place in Pennsylvania, and Stewart is the only South Carolina resident named as a Defendant in this action. Accordingly, the Court will deny this alternative motion.

## VI. Conclusion

Defendant's motion to dismiss, or in the alternative, to transfer venue, (ECF 15) is hereby **DENIED**. An appropriate order follows.

O:\CIVIL 17\17-4557 MetroPCS v. Thomas\17cv4557 MetroPCS Memo Denying MTD.docx